IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEVIN PHELAN            :
                        :
     Plaintiff,          :
                        :     No. 4:CV-08-0730
     v.               :
                        :     (Judge McClure)
ADELPHIA COMMUNICATIONS  :
CORPORATION, OFE II, LLC,    :
AND ADELPHIA              :
CONSOLIDATION, LLC,       :
                        :
     Defendants.      :

**MEMORANDUM**

December 1, 2009

## I.  Introduction

On April 18, 2008, plaintiff Kevin Phelan ("Phelan"), a citizen and resident

of the Republic of Ireland, instituted this civil action against defendants Adelphia

Communications Corp, OFE II, LLC, and Adelphia Consolidation, LLC

(collectively "Adelphia").  Plaintiff's complaint is for Declaratory Judgment

(Count I), Unjust Enrichment (Count II), and Breach of Implied Covenant of Good

Faith and Fair Dealing (Count III).  On January 29, 2009, this Court approved the

stipulation of dismissal of Count III.

## II.  Procedural History

On July 8, 2009, this Court decided, based on plaintiff's partial motion for

summary judgment, that the almost one-million dollars ($1,000,000) in liquidated damages that plaintiff paid pursuant to a provision in the parties' contract was invalid as a penalty. However, we deferred entering declaratory judgment on Count I, pending briefing from the parties on the appropriate amount of damages, if any, due to defendants. (Rec. Doc. No. 60). In our order, we noted in footnote 1 that although the standard on a motion for summary judgment is to take the facts in the light most favorable to the non-moving party, defendants failed to file a responsive statement of material facts pursuant to Middle District Local Rule 56.1. Therefore, all facts were taken from plaintiff's statement of material facts, and all such facts were deemed to have been admitted by defendants. Id.

Upon the entering of this Court's July 8, 2009 Order, the parties filed a plethora of motions. First, even though the motion for partial summary judgment had been decided in plaintiff's favor, plaintiff filed a motion to amend and revise our July 8, 2009 Memorandum and Order and a supporting brief. (Rec. Doc. Nos. 61 and 62). Plaintiff requested that we delete footnote 1 and replace it with language regarding the deposition testimony of defendants' employee. Plaintiff pointed out that defendants did file a statement of material facts, but the statement was mislabeled on the docket as defendant's opposing brief. Plaintiff further argued that we should not consider the affidavit of Paul Hemann, Adelphia's

treasurer, provided by defendants, as the affidavit contradicted the deposition testimony of Hemann and is a "sham affidavit" under Third Circuit case law. In their opposing brief, defendants argued that this Court needed to reconsider the motion for partial summary judgment using the facts defendants set forth in their statement of material facts, which defendants admitted is mislabeled on the docket. (Rec. Doc. No. 67). Defendants further argued that the affidavit is not a "sham affidavit" under Third Circuit case law. Plaintiff filed a reply brief arguing that the affidavit was in fact a "sham affidavit." (Rec. Doc. No. 71).

On July 21, 2009, defendants filed their Brief Regarding Actual Damages pursuant to our July 8, 2009 Order. (Rec. Doc. No. 63). In their four-line brief, defendants, the parties that would be the beneficiaries of the amount of damages ordered, chose to "forego[] the filing of a brief regarding the amount of damages so that the Order may now be considered final." Id. In his responsive brief, plaintiff argued that we should consider defendants' brief a waiver of any claim to damages. (Rec. Doc. No. 70). Plaintiff also argued that because his motion to amend the July 8, 2009 Order was still outstanding, and had been fully briefed by both parties, defendants' foregoing the filing of a brief regarding damages would not convert our July 8, 2009 Order into a final order.

On July 23, 2009, the defendants filed a motion for relief from the July 8,

2009 Order and a supporting brief. (Rec. Doc. Nos. 65 and 66). Defendants

requested that we vacate our July 8, 2009 Order pursuant to Fed. R. Civ. P. 60(b),

including our denial of oral argument on the motion for partial summary judgment,

and requested that we schedule oral argument on the motion for partial summary

judgment. Plaintiff filed an opposing brief arguing, once again, that we should not

consider Hemann's affidavit, as it is a "sham affidavit," and that we should not

grant defendants' Rule 60(b) motion, as our July 8, 2009 Order is not a final

judgment or order. (Rec. Doc. No. 72). In their reply brief, defendants argued that

material facts remain in dispute, they did file a statement of material facts,

Hemann's affidavit is not a "sham affidavit," and Rule 60(b) does apply because

they waived their damages argument so that the July 8, 2009 Order would be final.

(Rec. Doc. No. 73).

Pursuant to an order dated September 2, 2009, this Court denied plaintiff's

motion to amend and revise the July 8, 2009 Order. (Rec. Doc. No. 74). We also

denied, without prejudice, the defendants' motion seeking to vacate the July 8,

2009 Order. Id. Also pursuant to the order dated September 2, 2009, we informed

the defendants that they were permitted to file a motion for reconsideration, in lieu

of a Rule 60(b) motion, by September 22, 2009.

On September 21, 2009, the defendants filed a motion for reconsideration of

this Court's July 8, 2009 Memorandum and Order, as well as a supporting brief. (Rec. Doc. Nos. 75 and 76).  On that same date, defendants also filed a motion for oral argument on their motion for reconsideration.  (Rec. Doc. No. 78).  On September 28, 2009, the plaintiff filed a brief in opposition to the defendants' motion for reconsideration.  (Rec. Doc. No. 79).  The defendants filed a reply brief in support of their motion for reconsideration on October 5, 2009.  (Rec. Doc. No. 80).

The defendants' motion for reconsideration is therefore ripe for disposition. In light of the following, this Court will grant the defendants' motion for reconsideration.  Upon our reconsideration of our July 8, 2009 Memorandum and Order, we conclude that genuine issues of material fact remain in dispute. Therefore, we cannot conclude, as a matter of law, that the liquidated damages provision of the contract between the plaintiff and defendants is invalid as a penalty.  Defendants' motion for oral argument is denied.

## III.  Factual Background

The facts, taken in the light most favorable to the non-moving party, Adelphia, are as follows.[1]  Because of bankruptcy proceedings, Adelphia was

---

[1] Pursuant to M.D. Pa. L.R. 56.1, the moving party is required to file a statement of material facts in support of the motion for summary judgment, and the non-moving party must file a separate statement of facts.  Both parties are required

selling, among many other properties, a parcel of real estate which included their

corporate headquarters building in Coudersport, Pennsylvania. The property was

appraised as having a fair market value of $6,300,000. Adelphia hired a real estate

brokerage firm, Grubb and Ellis, and a marketing firm, LFC Marketing Services,

Inc. ("LFC"), to assist in the sale of this and other properties.

Through an on-line bidding process which closed on October 31, 2007, Joy

2001, LLC ("Joy") placed a winning bid of approximately $3,400,000. Pursuant to

a real estate purchase and sale agreement, Joy made a deposit of 10%, a sum

equaling $340,000, of the purchase price. Joy did not obtain financing to complete

the purchase, forfeiting its $340,000 deposit to Adelphia on December 17, 2007.

After Joy's default, potential buyers were required to submit a letter of intent

along with a deposit of $1,000,000. At his deposition on January 27, 2009,

Hemann testified that Bill Lange of LFC had proposed the increase to a $1,000,000

deposit "in order to make sure that it was serious buyers that were coming . . . ."

(Hemann Depo., at 36). Hemann stated that an additional reason for the

$1,000,000 deposit was "[t]o make sure that we had parties that were able to close

_____

to "include references to the parts of the record that support the statements." As
noted above, both the plaintiff (Rec. Doc. No. 37) and the defendants (Rec. Doc.
No. 44) have filed the requisite statements of facts. Therefore, we consider these
facts in a light most favorable to the non-party, here the defendants, in reaching our
conclusion.

on whatever the ultimate purchase price was, that they had the financial wherewithal to close." Id.

In an affidavit dated and filed on April 21, 2009, Hemann attempted to clarify his deposition testimony concerning the required $1,000,000 deposit. (Rec. Doc. No. 46 at 4). In his affidavit, Hemann stated that the $1,000,000 deposit "was a reasonable forecast in my mind as to the potential damage Adelphia might incur if a successful bidder like Mr. Phelan[2] defaulted on the purchase transaction." Id. Hemann stated that, in late 2007 and early 2008, he was concerned that another failed sale would impose nearly $700,000 in carrying costs related to the property for the subsequent year, cause additional attorney's fees, and stigmatize the property. Id. In his affidavit, Hemann claimed that Adelphia "would have incurred carrying costs, remarketing costs, and attorney's fees in the $1 million range" with a default by Phelan. Id.

Although Hemann had suggested $30,000,000 as the "Seller's Suggested Value" in the first amendment to the Auction Advertising and Marketing Agreement, an offer was submitted to Adelphia's attorney on December 31, 2007,

---

[2] It is disputed as to whether Mr. Phelan is a sophisticated businessman. Adelphia claims that he is and that he "has experience with real estate matters and was represented by counsel" concerning the sale of the Adelphia property. (Rec. Doc. No. 44 at 14). Despite this experience, Adelphia claims that Phelan did not read the agreement of January 21, 2008. Id.

seeking to purchase the property for $4,000,000.  However, Adelphia did not

pursue this offer.  Instead, on January 21, 2008, Phelan entered into an agreement

with Adelphia to purchase the property on January 31, 2008 for $3,400,000.

Phelan was required to make a deposit of $1,000,000.

The agreement dated January 21, 2008 contained two paragraphs of

particular relevance to the issue now before this Court.  First, the agreement

contained a liquidated damages clause within paragraph 2(a) that entitled Adelphia

to retain the $1,000,000 deposit as liquidated damages if Phelan failed to close on

the property.  Edie M. Suhr, an attorney with the firm selected by Adelphia to

represent it in the sale of the property in question, testified as to the language in the

agreement.  Attorney Suhr stated that the language indicating that the deposit was

non-refundable as liquidated damages "was specially created for the purchase

agreement" pertaining to the Adelphia property, though the language was derived

from standard language in other form agreements.  (Rec. Doc. No. 44 at 9).

Second, in paragraph 10(a), the agreement stated that the liquidated damages were

a reasonable approximation of damages to Adelphia in the event of a breach by

Phelan.  According to the testimony of Attorney Suhr, this language was "almost

certainly copied from other real estate purchase agreement forms" from her firm.

(Rec. Doc. No. 44 at 8).  Asked whether she discussed with anyone at Adelphia the

language in the agreement declaring the liquidated damages to be a reasonable approximation of damages to Adelphia in the event of a breach, Attorney Suhr said "no." Id. at 10. In his deposition, Hemann testified that he did not tell Attorney Suhr to include paragraph 2(a) or paragraph 10(a) in the agreement.

On or about January 11, 2008, Phelan paid the $1,000,000 deposit at the same time that he tendered his letter of intent and offer to purchase the Adelphia property. To represent him in the transaction concerning the Adelphia property, Phelan hired an attorney in the United States and transferred $2,000,000 to his attorney to be used toward the purchase of the property. Phelan claims that his attorney misappropriated this $2,000,000. After the $1,000,000 deposit, the balance still owed by Phelan on the property amounted to approximately $2,778,800.

After Phelan failed to deliver the balance of the purchase price by 2:00 p.m. on January 31, 2008, First American, the title company, delivered $999,750.00 of Phelan's deposit to Adelphia. As a result of Phelan's default, Adelphia was forced to re-market the property and received a number of offers ranging from $3,000,000 to $3,600,000. Eventually, in early April 2008, Klek Development purchased the property for $3,600,000. This purchase price amounted to $200,000 more than the amount at which Phelan had agreed to purchase the property. Adelphia claims that

its costs, incurred in light of the default by Phelan, were covered by the $1,000,000 deposit. Such costs included remarketing costs of $200,000 to LFC, attorney's fees to Attorney Suhr's law firm, and carrying costs[3] for the property at issue.[4]

## IV. Discussion

Defendants assert that this Court should reconsider its order dated July 8, 2009, in light of the inadvertent mislabeling of the defendants' statement of material facts filed by the defendants pursuant to Middle District Local Rule 56.1. (Rec. Doc. No. 44). Defendants argue that, as this Court believed the defendants failed to file a required statement of material facts pursuant to Local Rule 56.1 and relied on only the plaintiff's statement of material facts in granting his motion for partial summary judgment, the defendants are entitled to this Court's reconsideration of the plaintiff's motion for partial summary judgment.

In our review of the defendants' motion for reconsideration of our order dated July 8, 2009, we will conduct a two-step process. First, we must decide

---

[3] Adelphia claims that such carrying costs included utilities, property taxes, insurance, and other services.

[4] In light of the property's location, future remarketing costs, the potential legal fees associated with a subsequent sale of the property, the annual carrying costs of nearly $700,000 on the property, and the "uncertain real estate market" at the time, Adelphia claims that a $1,000,000 liquidated damages clause was a reasonable approximation of the damages that would be incurred by Adelphia if Phelan were to default on the purchase agreement of January 21, 2008.

whether the defendants are entitled to a reconsideration of our July 8, 2009 Memorandum and Order. Second, if such a reconsideration is warranted, we must reconsider the plaintiff's motion for summary judgment.

## 1. Step One: Whether Reconsideration is Proper

A motion for reconsideration is a device of limited utility. Its purpose is to correct manifest errors of law or fact or to present newly discovered evidence. Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Accordingly, a party seeking reconsideration must demonstrate at least one of the following grounds prior to the court's altering, or amending, a standing judgment: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court entered judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). A motion for reconsideration is appropriate in instances where the court has "patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." Rohrbach v. AT & T Nassau Metals Corp., 902 F.Supp. 523, 527 (M.D. Pa. 1995), vacated in part on other grounds on reconsideration, 915 F.Supp.

712 (M.D. Pa. 1996) (quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D.Va.1983)). It may not be used as a means to reargue unsuccessful theories or argue new facts or issues that were not presented to the court in the context of the matter previously decided. Drysdale v. Woerth, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Cas. Co. v. Diversified Indus., Inc., 884 F.Supp. 937, 943 (E.D. Pa. 1995).

It appears as though both parties agree that reconsideration is warranted in the instant case. Defendants claim that reconsideration is required because our order dated July 8, 2009 "is tainted by [this] Court's oversight of Defendants' Separate Statement, which in turn was precipitated by Defendants' counsel's clerical error." (Rec. Doc. No. 80 at 2). Because of the improper docket entry concerning the defendants' statement of material facts, this Court did not consider the defendants' statement of material facts in our granting of the plaintiff's motion for partial summary judgment. The plaintiff appears to concur with the defendants' claim that a reconsideration is warranted; in his brief in opposition to the defendants' motion for reconsideration, Phelan concedes that he "is not aware of any facts on the basis of which [he] can in good faith dispute the Defendants'

contention of excusable neglect and therefore does not do so." (Rec. Doc. No. 79 at 1).

In light of the above, we will grant the defendants' motion for reconsideration. Motions for reconsideration are granted sparingly. However, in this Court's initial consideration of plaintiff's motion for partial summary judgment, we were unable to take into consideration those material facts that the Defendant filed, albeit under an improperly labeled docket heading. (Rec. Doc. No. 44). In addition, by reconsidering our granting of plaintiff's partial motion for summary judgement, we will prevent a manifest injustice that would be exacted upon the defendants. Therefore, we will grant the defendants' motion for reconsideration.

## 2. Step Two: Reconsideration of Plaintiff's Motion for Partial Summary Judgment

In light of this Court's granting of the defendants' motion for reconsideration, we turn again to the plaintiff's motion for summary judgment. Summary judgment is appropriate when 1) there are no material facts in dispute; and 2) one party is entitled to judgment as a matter of law. Int'l Union, United Mine Workers of Am. v. Racho Trucking Co., 897 F.2d 1248, 1252 (3d Cir. 1990) (citing Fed. R. Civ. Pro. 56©).

A district court may grant a motion for summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those which might affect the outcome of the suit. Id, Justofin v. Metropolitan Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004).

Regardless of who bears the burden of persuasion at trial, the party moving for summary judgment has the burden to show an absence of genuine issues of material fact. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996) (citations omitted). To meet this burden when the moving party does not bear the burden of persuasion at trial, the moving party must show that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.'" Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir. 1989) (quoting Chippolini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d. Cir. 1987)); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). More simply put, a party moving for summary judgment who does not bear the burden of persuasion at trial is not required to negate the nonmovant's

claim, but only point out a lack of evidence sufficient to support the nonmovant's claim. <u>Country Floors, Inc. v. Partnership Composed of Gepner and Ford</u>, 930 F.2d 1056, 1061 (3d Cir. 1991).

Once the moving party meets its burden of showing an absence of genuine issues of material fact, the nonmoving party must provide some evidence that an issue of material fact remains. <u>Matushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The nonmoving party, however, cannot do so by merely offering general denials, vague allegations, or conclusory statements; instead, the party must point to specific evidence in the record that creates a genuine issue as to a material fact. <u>Celotex</u>, 477 U.S. at 32; <u>Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.</u>, 172 F.3d 238, 252 (3d Cir. 1999).

## A. The Hemann Affidavit

In his statement of material facts filed on March 23, 2009, Phelan claims Hemann testified that the deposit of $1,000,000 "was required solely to ensure that interested parties had what Hemann described as the 'financial wherewithal' to close the transaction." (Rec. Doc. No. 37 at 4). Adelphia, in its statement of facts that was mislabeled on the docket, disputes this claim. (Rec. Doc. No. 44). Instead, Adelphia points out that Hemann, in an affidavit filed with this Court on the same day as Adelphia's statement of material facts, clarified his interpretation

of his deposition testimony regarding the deposit.  Id. at 6-7.  In his affidavit,

Hemann states:

> I never testified that the 'sole' reason for the increased deposit amount
> was to ensure that interested parties had the financial wherewithal to
> close the transaction.  What I understood was being asked about . . .
> were reasons that Bill Lange of LFC provided for his suggestion to
> increase the deposit amount to $1 million.  I never testified that the
> reasons given by Bill Lange at LFC for his suggestion to increase the
> deposit amount were . . . the exclusive reasons that Adelphia
> considered for increasing the deposit amount.   (Rec. Doc. No. 46)

(Rec. Doc. No. 46 at 5).  Adelphia claims that the Hemann affidavit creates a

genuine issue of material fact as to whether the $1,000,000 deposit was a

reasonable estimation of actual damages or merely a penalty designed for the sole

purpose of determining prospective purchasers' financial wherewithal.

Phelan has responded by arguing that this Court may not consider the

Hemann affidavit, as it is a "sham affidavit."  Pursuant to the so-called sham

affidavit doctrine, "a party may not create a material issue of fact to defeat

summary judgment by filing an affidavit disputing his or her own sworn testimony

without demonstrating a plausible explanation for the conflict."  Jiminez v. All

Am. Rathskeller, Inc., 503 F.3d 247, 251 (3d Cir. 2007) (quoting Baer v. Chase,

392 F.3d 609, 624 (3d Cir. 2004)).  In Jiminez, the Court of Appeals for the Third

Circuit recognized the "continued vitality and importance" of the sham affidavit

doctrine. 503 F.3d at 253. The Third Circuit explained that "[a] sham affidavit is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment." Id. A judge may conclude that summary judgment is proper, and thus that evidentiary weight could not be given to an affidavit by any reasonable jury, "if it is clear that [the] affidavit is offered solely for the purpose of defeating summary judgment. Id. The Third Circuit does utilize a more flexible approach to the question of whether an affidavit will be considered a sham affidavit, though affidavits are generally considered less reliable than prior depositions. See id. at 253-54. In conformity with this flexible approach, an affiant may "offer a 'satisfactory explanation' for the conflict between the prior deposition and the affidavit." Id. at 254 (quoting Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991)).

We conclude that the Hemann affidavit is not a sham affidavit and may be considered by this Court in deciding whether a grant of summary judgment is proper. With his affidavit, Hemann is not seeking to contradict or discredit his prior deposition testimony; instead, he merely is seeking to explain or clarify the answers he gave at his deposition. We cannot conclude that this explanation or clarification is unreasonable. Similarly, it does not appear as though Hemann

offered the affidavit for the sole purpose of opposing summary judgment or that he is unable to assert a consistent story. Even if we were to question initially the submission of the affidavit, we believe Hemann has satisfactorily explained why he answered the questions at his deposition the way he did, especially as compared to the declaration he made in his affidavit. As Hemann stated in his affidavit, it was his understanding that his deposition testimony related to the reasons why LFC had proposed increasing the deposit to $1,000,000, not to all of the reasons Adelphia considered in increasing the deposit.

In light of the above, we conclude that the Hemann affidavit is not a sham affidavit and may therefore be properly considered by this Court in the context of plaintiff Phelan's partial motion for summary judgment.

## B. The $1,000,000 Deposit as Liquidated Damages or Unenforceable Penalty

The question presently before this Court is whether the $1,000,000 deposit forfeited by Phelan is properly considered liquidated damages or a penalty. Whether this forfeiture "is a penalty or liquidated damages is a question for the court, to be determined by the intention of the parties, examined in the light of its subject-matter and its surroundings." Laughlin v. Baltalden, Inc., 159 A.2d 26, 29 (Pa. Super. 1960), see also Holt's Cigar Co. v. 222 Liberty Assoc., 591 A.2d 743, 748 (Pa. Super. 1990). We also note that declaratory judgment is a discretionary

remedy, and one which this Court may grant even when entry of the judgment would not terminate the uncertainty or controversy, i.e. the appropriate amount of liquidated damages.  See e.g. 42 Pa.C.S. §§ 7532, 7537, and 7539.

In 1883, the Pennsylvania Supreme Court declared the following in regards to liquidated damages provisions:

> [T]he question whether the amount stated in a conditional bond or contract is to be taken as a penalty or a liquidation of damages arising from a breach of the condition, is to be determined by the intention of the parties, drawn from the words of the whole contract, examined in the light of its subject matter and its surroundings; and that in this examination we must consider the relation which the sum stipulated bears to the extent of the injury which may be caused by the several breaches provided against, the ease or difficulty of measuring a breach of damages, and such other matters as are legally or necessarily inherent in the transaction.

March v. Allabough, 103 Pa. 335, 341 (Pa. 1883).  Liquidated damages provisions will be enforceable if, "at the time the parties enter into the contract, the sum agreed to constitutes a reasonable approximation of the expected loss rather then [sic] an unlawful penalty."  Brinich v. Jencka, 757 A.2d 388, 402 (Pa. Super. Ct. 2000) (quoting Carlos R. Leffler, Inc. v. Hutter, 696 A.2d 157, 162 (Pa. Super. 1997)).  Liquidated damages, being a term of art, "denotes the sum a party to a contract agrees to pay if he breaks some promise, and which, having been arrived at by a good faith effort to estimate in advance the actual damage that will probably

ensue from the breach, is legally recoverable if the breach occurs." Pantuso

Motors, Inc. v. CoreStates Bank, N.A., 798 A.2d 1277, 1282 (Pa. 2002) (internal

citations omitted).

On the other hand, when "a stipulated damages clause is intended as a form

of punishment with the purpose, in terrorem, to secure compliance, the principles

of compensation are subordinated and the provision must fail as an unenforceable

penalty." Holt's Cigar, 591 A.2d at 747 (citing See In re Plywood Company of

Pennsylvania, 425 F.2d 151, 155 (3d Cir. 1970)). A liquidated damages provision

also will be deemed a penalty if it "calls for payment of a sum on non-performance

or on default that is disproportionate to the value of the performance promised or

the injury that has actually occurred . . . ." Robins Motor Transp. v. Associated

Rigging & Hauling Corp., 944 F. Supp. 409, 412 (E.D. Pa. 1996) (quoting Finkle

v. Gulf & Western, 744 F.2d 1015, 1021 (3d Cir. 1984)).

A court in Pennsylvania will deem a liquidated damages clause

unenforceable as a penalty "even if parties of equal bargaining power, negotiating

at arms length, agreed to the penalty provision." Giant Food Stores v. Kmart

Corp., 1996 U.S. Dist. LEXIS 10916 (E.D. Pa. 1996) (citing Holt's Cigar, 591 A.2d

at 749 n.6)).

Originally, Adelphia required a purchaser to provide as a deposit only 10%

of the $3,400,000 purchase price.[5]  After the first prospective purchaser,  Joy 2001,

LLC, defaulted, Adelphia increased the required deposit to $1,000,000.   Phelan

claims that this increase was made so as "to ensure that interested parties had what

Hemann described as the 'financial wherewithal' to close the transaction."  (Rec.

Doc. No. 37 at 4).  Adelphia disputes this interpretation, pointing to Hemann's

deposition in which he clarified that he understood the deposition questioning to

have concerned the "reasons that Bill Lange of LFC provided for his suggestion to

increase the deposit amount to $1 million."  (Rec. Doc. No. 46 at 5).  Hemann went

on to note that he never stated that these reasons proffered by Bill Lange "were . . .

the exclusive reasons that Adelphia considered for increasing the deposit amount."

Id.  Adelphia argues that the increase to a $1,000,000 deposit was warranted by

such considerations as attorney's fees, additional carrying costs, the property's

location, and an "uncertain" market for real estate.

If there were no genuine dispute that the increase in the deposit to

$1,000,000 was made solely for purpose of verifying the financial wherewithal of a

prospective purchaser, we would be inclined to find such a deposit to be a penalty.

_____

[5] While the Court agrees with Adelphia that there is no bright line rule in
Pennsylvania that liquidated damages are capped at 10% of the purchase price, we
note the increase in the amount of liquidated damages simply in analyzing whether
the new liquidated damages provision is a penalty. We do not comment on what
amount or percentage of the purchase price is appropriate.

In such a case, the sheer amount of the increase and deposit, untethered as to any basis in expected costs, would be totally disproportionate to any risk of damages or injury in the event of a breach by Phelan. In fact, this type of reasoning formed the basis of our July 8, 2009 Memorandum and Order in which, after considering only the plaintiff's statement of facts, we noted that Adelphia had admitted that "the increased deposit was to ensure buyers had the 'financial wherewithal' to complete the transaction. In other words, Adelphia required a one-million dollar deposit as punishment, the threat of which was designed to prevent breach." (Rec. Doc. No. 60 at 9). We went on to note the ease with which Adelphia could have calculated expected damages. Id. Absent any grounding in actual expected damages, such an increase would look far more like a penalty than a proper liquidated damages clause.

However, after taking into account all facts in the light most favorable to the non-moving party, Adelphia, we conclude that there remains at least one genuine issue of material fact in dispute. Adelphia has pointed to evidence supporting its claim that it took into account such factors as the property's location, future remarketing costs, legal fees, the annual carrying costs of nearly $700,000 on the property, and the "uncertain real estate market" when Adelphia was attempting to sell the property when it decided to increase the required deposit. On the other

hand, Phelan claims that Hemann's deposition testimony supports the conclusion that the deposit was increased solely to substantiate the financial wherewithal of prospective buyers. The facts in dispute, therefore, are material and have significant implications concerning the reasonableness and proportionality of the $1,000,000 deposit. As there remains at least one genuine issue of material fact, we will deny plaintiff Phelan's partial motion for summary judgment as to Count I of his complaint.

For the above reasons, we grant defendants' motion for reconsideration and, upon our reconsideration of our July 8, 2009 Memorandum and Order, we conclude that there remains a genuine issue of material fact that is still in dispute. We therefore cannot conclude at this stage that the liquidated damages provision of the purchase agreement between the parties is invalid as a penalty. As such, we will deny plaintiff Phelan's partial motion for summary judgment as to Count I of his complaint. In addition, we will deny defendants' motion for oral argument, as we do not believe oral argument would add to the Court's understanding of the issues.

            s/ James F. McClure, Jr.
            James F. McClure, Jr.
            United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEVIN PHELAN                          :
                                      :
        Plaintiff,                    :
                                      :        No. 4:CV-08-0730
        v.                            :
                                      :        (Judge McClure)
ADELPHIA COMMUNICATIONS               :
CORPORATION, OFE II, LLC,             :
AND ADELPHIA                          :
CONSOLIDATION, LLC,                   :
                                      :
        Defendants.                   :

**ORDER**

December 1, 2009

   1.  Defendants' Motion for Reconsideration is GRANTED.  (Rec. Doc. No.

75).

   2.  Plaintiff's Motion for Partial Summary Judgment is DENIED.  (Rec.

Doc. No. 34).

   3.  Defendants' Motion for Oral Argument is DENIED.  (Rec. Doc. No. 78).

   4.   A further case management conference by telephone conference call is

scheduled for December 8, 2009 at 11:00 a.m.  Defendant's counsel shall arrange

for the conference call.  (Chamber's telephone number is 570-323-9772.)  The

conference is held to determine the course of further proceedings.


        s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge